# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOHN M. DVORAK,

        Plaintiff,

    v.                                 Case No. 07-C-219

DOUGLAS COUNTY SHERIFF, et al,

        Defendant.

---

**DECISION AND ORDER**

---

       Pro se plaintiff John M. Dvorak filed a civil rights complaint under 42 U.S.C. § 1983 against the defendants, who include the administrators and medical staff of the Douglas County Jail. Dvorak alleges that the jail administrators denied him his Fourteenth Amendment right to access the courts by failing to maintain an adequate law library. He further claims that the administrators and the medical staff violated the Eighth Amendment prohibition against cruel and unusual punishment through their deliberate indifference to his medical and mental health conditions. The deliberate indifference complaint relates to Dvorak's assertion that the defendants unreasonably denied him narcotic painkillers and refused to treat his mental illness, back pain, and broken molar. The case is before the court on defendants' motion for summary judgment, which shall be granted for the reasons set forth below.

## BACKGROUND

Dvorak was incarcerated at the Douglas County Jail from May 12, 2001 until July 22, 2001, as well as April 6-28, 2006 and April 5, 2007 to May 3, 2007. (Dvorak Dep., p. 6, ln. 24-25, p. 7, ln. 1, 11-14, 19-22, p. 8, ln. 3-4, 15-16.) He initially filed suit in December 2002 alleging that he was denied access to the courts by what he perceived to be a substandard law library at the Douglas County Jail and that jail staff were deliberately indifferent to his medical needs by not prescribing Percocet for his shoulder pain and failing to treat his manic-depression. (Dvorak Dep., p. 9, ln. 9-14, p.13, ln. 3-12.) He voluntarily withdrew the suit a month later because he claimed to have no access to a law library. (Am. Compl., 3.) Dvorak re-filed the suit on March 2, 2007 and filed an amended complaint on May 15, 2007. (Compl., Am. Compl.)

On April 27, 2001 Dvorak fractured his right clavicle when he jumped or was thrown from a "four-wheeler." (Sura Aff., Ex. A, p. 1.) He was treated at St. Mary's Hospital of Superior and was given a two-to-four day supply of the narcotic pain-reliever Vicodin. (*Id*.) On May 2, 2001 he was seen by his personal physician Dr. Trehan, who gave Dvorak prescriptions for the anti-inflammatory pain reliever Naproxen as well as another prescription for Vicodin. (Pl.'s Answers to Defs.' Interrogs., p. 1, 2.) Dvorak requested more pain relievers on May 10, 2001 and Dr. Trehan prescribed 30 tablets of the narcotic pain-reliever Percocet. (*Id*. at 3.) Dvorak, however, did not pick up the prescription prior to his May 12 incarceration. (*Id*. at 4.)

Dvorak saw Nurse Jones on May 13, 2001 at Douglas County Jail and requested Percocet to treat his shoulder pain. (Sura Aff., Ex. A at 2.) Nurse Jones informed him that she was unable to prescribe narcotics and that he would need to see Dr. Sura for such a prescription. (*Id*.) She offered him Tylenol, but he refused and asked to see Dr. Sura. (*Id*.) Dr. Sura saw Dvorak two days

2

later on May 15, 2001 and informed him that his medical records would need to be reviewed before he could be prescribed narcotics. (*Id*. at 2-3.) Dr. Sura offered Dvorak ibuprofen to treat his pain in the meantime, but Dvorak refused. (*Id*.)

After requesting to see a doctor for his shoulder and psychiatric issues, Dvorak again saw Dr. Trehan on May 22, 2001. (Linder Decl., Ex. B – 7/14/01 Inmate Grievance Response.) Although Dvorak alleges that Dr. Trehan would have prescribed more Percocet but for a deputy's statement that it was not allowed in the jail, (Am. Compl., p. 4), the record reflects only that Dr. Trehan prescribed Naproxen rather than Percocet. (Defs.' Sura and Vujkovich Reply Brief at 2, n. 4.) Although he was encouraged to take his medications by jail staff, Dvorak stated that he was not taking them because they did not work. (*Id*.)

On May 29, 2001 Dvorak saw Dr. Moen, an orthopedic surgeon who determined that Dvorak's clavicle injury had healed to the point that a shoulder strap was no longer necessary. (*Id*. at 7.) This was the extent of Dvorak's treatment for his fractured clavicle and he asserts that the defendants were deliberately indifferent to his injury, resulting in his suffering unnecessary pain in violation of the Eighth Amendment ban on cruel and unusual punishment. (Am. Compl., p. 3-4, Pl's Resp. to Defs.' Motion for Summ. J., p. 1-3.)

Dvorak also alleges that the defendants were deliberately indifferent to his serious mental health problems. (Am. Compl., p. 3, Typewritten Supplement p. 1-2.) On May 30, 2001 Dr. Sura prescribed Celexa, an anti-depressant Dvorak had previously taken, but Dvorak refused to take it. (Sura Aff., Ex. A at 8.) Dr. Sura met with Dvorak on June 5, 2001 to discuss his mental health treatment. (*Id*. at 2-3.) Based on his observations and Dvorak's history, Dr. Sura diagnosed him as possibly suffering from depression, schizophrenia, and bi-polar disorder. (*Id*. at 9.) He prescribed

3

Pamelor and Lithium, which Dvorak initially refused but later requested. (*Id.*) Dvorak again refused the Lithium on June 11, 2001, June 13, 2001 and July 10, 2001. (Id. at 11, 13.) Dr. Sura met with Dvorak again on July 17, 2001 and conferred with Dvorak's psychiatrist, Dr. Capell, who placed Dvorak on Doxepin. (*Id*. at 15.)

During his next incarceration at Douglas County Jail, Dvorak was seen by Dr. Sura, who added Fluoxetine and Klonopin to Dvorak's current prescriptions of Doxepine and Lamictal, all for his mental health problems. (*Id*. at 17.) Most recently, Dvorak was incarcerated at Douglas County Jail in April 2007 and saw Dr. Vujkovic twice. (Vujkovic Aff., Ex. A at 2.) The first visit, April 13, 2007, was for Dvorak's mental health issues. (*Id*. at 3.) Dr. Vujkovic diagnosed him as bi-polar and prescribed Cymbalta and Doxepin. (*Id*.) He also prescribed Naproxen for Dvorak's complaint of back and leg pain, as well as Clonazepam for panic attacks. (Id.) The second visit was April 26, 2007 at which Dr. Vujkovic saw Dvorak for a broken molar that had caused a one-millimeter canker sore. (*Id*. at 2.) He prescribed Doxepin and Citalopram for Dvorak's mental health issues and Naproxen for pain from the molar, (*id*.), which had been broken for a year at the time Dr. Vujkovic saw Dvorak. (Am. Compl., Typewritten Supplement p. 2.)

Dvorak alleges that Dr. Sura, Nurse Brand, and Dr. Vujkovic denied him his prescription medications and refused to treat his mental health problems. (Am. Compl., Typewritten Supplement p. 1.) He also asserts that Dr. Vujkovic and Nurse Brand refused to treat his molar and a pinched nerve in his back. (*Id*. at 2.) He requests a jury trial, $2.5 million in compensatory and punitive damages, and an order "allowing prisoners the medications they need, and prescribed by their personal doctors." (Am. Compl., 5.)

4

Finally, Dvorak alleges that he was unable to file complaints and his Fourteenth Amendment right to access the courts was denied due to the fact that the Douglas County Jail's law library was inadequate. (Am. Compl., 4, Typewritten Supplement p. 1.) He wished to represent himself in a 2001 drug case as well as in the case against Douglas County for refusing him his Percocet and denying him access to legal materials. (Dvorak Dep., p. 17, ln. 8-18.) This suit for denial of access refers only to his 2001 and 2007 incarcerations. (Dvorak Dep., p. 11, ln. 15-22.)

Dvorak filed complaints in the jail's grievance process twice for the refusal to prescribe Percocet, and appealed the adverse decisions. (Linder Decl., Ex. B at 2, 6.) Jail Administrator Fred Linder denied the grievances because narcotics are only allowed in rare and extreme cases and Dvorak had failed to comply with the recommended medical treatment by refusing to take medication. (*Id.* at 3.)

## DISCUSSION

### I. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(c), "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id*. Once the moving party has demonstrated the absence of a genuine issue of material fact, the

5

burden shifts to the non-moving party to show that there is a genuine dispute as to the material facts of the case. *Id*. at 323-24. The responding party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

## II. Analysis

### A. Denial of Access to the Courts

Dvorak alleges that his Fourteenth Amendment right to access the courts was violated because he was denied legal materials necessary for him to defend himself in a 2001 drug prosecution as well as to initiate and pursue this lawsuit. (Am. Compl., 1, 4.)

Inmate access to the courts must be adequate, effective, and meaningful. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). In order to facilitate that access, prison authorities must provide inmates with assistance in preparing and filing court documents by supplying the equivalent of trained legal assistance or adequate law libraries. *Id*. at 828. However, standing doctrine requires that an inmate alleging a violation of his right to access the courts must demonstrate an actual injury apart from the denial of legal assistance itself. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). It is not enough for an inmate to allege that the law library is deficient; he must show that the deficiency hindered his claim such that he was denied access to the courts. *See id.* at 351 (Examples included a law library so inadequate that an inmate was unable to file a complaint and a dismissal for a technical violation that was unknown due to the deficiency).

Douglas County Jail records show that Dvorak was allowed to go to the law library ten times for a total of roughly 16 and one-half hours during his 2001 incarceration. (Linder Decl., Ex. A –

6

Jail Log.) He was also allowed to take paperback reference books to his cell provided they did not create a fire hazard. (Linder Decl., Ex. B – Inmate Grievance Response 5/28/01.) Dvorak does not dispute that he had access to the materials in the law library, but instead argues that the library materials were inadequate. (Dvorak Dep., p. 12, ln. 20-25, p. 13, ln. 1-2.) He claims that the library contained only some Wisconsin statutes, <u>Black's Law Dictionary</u>, the Federal Rules of Civil Procedure, and some immigration law materials. (Pl. Resp. to Defs.' Interrogs., p. 2, no. 4(b); Dvorak Dep. p. 12, ln. 20-25.) Dvorak claims (and defendants do not dispute) that all of the books are missing pages. (*Id.*) Due to a lack of books and the missing pages in the books that were present, Dvorak alleges that he was unable to represent himself or take any legal action against Douglas County Jail. (Pl. Resp. to Defs.' Interrogs., p. 2, no. 4(c).)

Dvorak was appointed a public defender for his 2001 criminal case, (Dvorak Dep., p. 25, ln. 9-12), and for his 2007 criminal case. (Am. Compl., Typewritten Supplement p. 1.) He refused the public defender in 2001 and attempted to defend himself. (Dvorak Dep., p. 24, ln. 24-25.) When an inmate refuses appointed counsel, "no constitutional right exists mandating that the prisoner in the alternative be provided access to a law library." *United States ex rel George v. Lane*, 718 F.2d 226, 227 (7th Cir. 1983). Accordingly, Dvorak's denial of access claim can only refer to the civil cases he filed in 2002 and 2007 alleging deliberate indifference to serious medical conditions.

Dvorak waited until 2002, when he was out of Douglas County Jail, to file his original claim. (Dvorak Dep., p. 13, ln. 8-9.) He waited to file the case until he got to prison because he believed that the prison had a better law library. (*Id*. at p. 13, ln. 10-12.) At his deposition, Dvorak stated that he could not say for sure if the missing books and pages affected his lawsuit in 2001

7

because he did not even attempt to file a claim. (*Id*. at p. 29, ln. 5-16.) He also stated that the lack of Wisconsin statute books of which he had complained would not have affected this 2007 lawsuit. (*Id*. at p. 16, ln. 2-12.) Without being able to point to any actual injury caused by the alleged deficiencies in the Douglas County Jail law library, Dvorak cannot succeed on his denial-of-access claim. *See Lewis*, 518 U.S. at 349.

### B. Deliberate Indifference to Serious Medical Needs

Dvorak claims that the defendants showed deliberate indifference to his various medical and mental health needs. (Am. Compl.) Deliberate indifference to the serious medical needs of an inmate constitutes the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment" and states a claim under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal citations omitted). Such a claim contains both an objective and a subjective component. *Greene v. Dailey*, 414 F.3d 645, 653 (7th Cir. 2005). A prisoner must demonstrate that he has an objectively serious medical condition, either diagnosed as requiring further attention or "so obvious that even a layperson would perceive the need for a doctor's attention." *Id*. The prisoner must also establish a sufficient level of culpability on the part of the prison officials. *Id*. The officials "must know of and disregard an excessive risk to inmate health; indeed, they must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw the inference." *Id*. (internal quotations and citations omitted).

A patient's disagreement with a doctor's judgment or treatment plan does not amount to deliberate indifference, even if it amounts to malpractice. *Id*. (citing *Estelle*, 429 U.S. at 106). "Medical decisions that may be characterized as 'classic example[s] of matter[s] for medical

8

judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

Dvorak's deliberate indifference claims consist of his allegations that Douglas County Jail medical staff and administrators denied him narcotic painkillers, failed to adequately treat his mental health problems, failed to treat his broken molar, and failed to treat a pinched nerve in his back. (Am. Compl., 3-4, Typewritten Supplement, p. 2.)

### 1. Denial of Narcotic Painkillers

The Sheriff and Jail Administrator deferred to the judgment of the medical staff as to the appropriate treatment for Dvorak's health problems, both physical and mental. The Jail Administrators reviewed Dvorak's grievances and upheld the decision to deny narcotics because the jail's medical staff believed they were unnecessary, Dvorak's own doctor had declined to re-issue the prescription, and Dvorak had refused to follow the course of treatment established by the medical staff. (Linder Decl., ¶ 14.) "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Greene*, 414 F.3d at 654 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). Unless the prison official knows or has reason to know that the facility's medical staff are mistreating an inmate or not treating him at all, that official will not be liable under the Eighth Amendment. *Spruill*, 372 F.3d at 236. Although the Jail Administrator was aware of Dvorak's disagreement with his treatment, there is no evidence that the Administrator considered or should have considered it mistreatment.

Nurse Brand was not authorized to prescribe or dispense narcotic medications. (Brand Decl., ¶ 11.) She also could not unilaterally decide to give non-narcotics if patients were authorized to receive narcotics. (*Id.* at ¶ 9.) There is no evidence that Nurse Brand was deliberately indifferent

9

to Dvorak's shoulder pain, as she followed the supervising doctor's orders and gave Dvorak all medications as directed, except when he refused to take them. (*Id*. at ¶ 16.)

Dr. Sura saw Dvorak for the first time on May 15, 2001, 18 days after Dvorak broke his clavicle. (Sura Aff., Ex. A at 2-3.) At that time, he offered Dvorak ibuprofen for his discomfort, which was refused. (*Id*. at 3.) This was the only time that Dr. Sura saw Dvorak for his shoulder, and the only time that he declined to prescribe Percocet. (*Id*.) Dvorak has not offered any evidence other than his own opinion that Percocet was necessary or even appropriate. Even his own physician apparently did not believe it was needed because he prescribed Naproxen instead when Dvorak met with him on May 22, 2001. (Sura/Vujkovic Reply Br. at 2, n. 4.) The most that Dvorak has alleged is a difference of opinion over the course of his treatment, which does not qualify as deliberate indifference to a serious medical need. *See Snipes*, 95 F.3d at 590. Pain management methods are for doctors to decide "free from judicial interference, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Id*. at 592 (internal quotations omitted). Even if Dvorak can establish that treatment for his broken clavicle remained a serious medical need after it had been healing for 18 days, he cannot show that Dr. Sura knew that the failure to prescribe Percocet presented an excessive risk to Dvorak's health and that Dr. Sura disregarded that risk.

2. Denial of Mental Health Treatment

As with the Percocet issue, the Sheriff and Jail Administrator deferred to the judgment of the medical staff as to the appropriate course of treatment for Dvorak's mental health needs. (Linder

10

Decl., ¶ 16.) Jail Administrator Linder reviewed the treatment in response to Dvorak's grievances and determined that Dvorak was receiving his prescribed medications in appropriate dosages. (*Id.*) In 2001, Dvorak was given Pamelor, Lithium, Doxepin, Lithobid, and Trazodone for his mental health problems. (Brand Decl., Ex. A – 2001 Medication Sheets.) He was seen by two doctors, including an outside psychiatrist, as well as the Douglas County Jail counselors for his mental health problems. (Sura Aff., ¶ 27; Linder Decl., Ex. B – 7/14/01 Inmate Grievance Response.)

Much the same occurred when Dvorak was re-incarcerated at Douglas County Jail in 2006 and 2007. In 2006, he saw Dr. Sura, who added Fluoxetine and Klonopin to Dvorak's doses of Doxepine and Lamictal for his mental health issues. (Sura Aff., Ex. A at 17.) In 2007, he saw Dr. Vujkovic twice. (Vujkovic Aff., Ex. A at 3.) The first time, Dr. Vujkovic prescribed Cymbalta and Doxepin for Dvorak's mental health problems, as well as Clonazepam for panic attacks. (*Id.*) The second time, when Dvorak said the other medications were not working, Dr. Vujkovic added Doxepin and Citalopram. (*Id.* at 10.) Dvorak alleges that the dosage of Clonazepam was incorrect, (Pl. Resp. to Defs.' Mot. for Summ. J., p. 1 no. 5), but there is evidence that he merely misunderstood the dosage of the tablets. (Vujkovic Aff., Ex. A at 5.) Dvorak's allegation that Drs. Sura and Vujkovic were deliberately indifferent to his serious mental health needs is contradicted by the evidence that both doctors treated him and altered the treatment when Dvorak claimed it was ineffective. Again, Dvorak merely disagrees with his doctors' course of treatment without showing any evidence of indifference, deliberate or otherwise.

3. Refusal to Treat Back Pain

On both occasions that Dr. Vujkovic saw Dvorak, Dr. Vujkovic prescribed Naproxen for his back pain, increasing the dosage the second time because Dvorak complained that it was

11

ineffective. (Vujkovic Aff., Ex. A at 2.) Dvorak refused to take the medication twice. (*Id*. at 9, 10.) Again, Dvorak merely alleges without supplying evidence that the defendants' medical treatment was deliberately indifferent because he disagreed with the medication prescribed. This does not meet the culpability standard required for a successful deliberate indifference claim.

    4. Refusal to Treat Broken Molar

Dvorak's allegation that his broken molar presented a serious medical need is without merit. He went without treatment for the condition for a year, and only sought treatment because the broken tooth had caused a one-millimeter canker sore. (Am. Compl., Typewritten Supplement p. 2.) A tiny canker sore is not an objectively serious medical condition, nor is a tooth that has been missing a crown for a year.

## CONCLUSION

From the evidentiary materials presented, no reasonable juror could conclude that the defendants denied Dvorak his right to access the courts, or that any Douglas County Jail staff or administrators were deliberately indifferent to his medical needs, whether serious or not. Defendants' motions for summary judgment are therefore granted and plaintiff's claims are dismissed.

    **SO ORDERED** this __20th__ day of June, 2008.

                         s/ William C. Griesbach
                         William C. Griesbach
                         United States District Judge